# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

**MISTY HOWELL FARMER**                    **CASE NO.  2:19-CV-01384**

**VERSUS**                                 **JUDGE JAMES D. CAIN, JR.**

**DALE L BAILEY ET AL**                    **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 52) filed by Defendants, former Sheriff Ricky Moses, Jeannie Irvine, Jermaine Tyler, Joe Toler and Lisa Gearen who move for partial summary judgment pursuant Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL STATEMENT

In 2019, Misty Howell Farmer, was incarcerated as a pretrial detainee in the Beauregard Parish Jail.[1]  On May 11, 2019, and on May 27, 2019, Farmer made medical requests.[2] Farmer was seen on May 15, 2019 and May 28, 2019.[3] On May 28, 2019, Farmer was admitted to Beauregard Memorial Hospital with a kidney infection.

On or about May 30, 2019, during her hospital stay, Farmer reported that she had been sexually assaulted by Deputy Dale Bailey while he was guarding her. Deputy Bailey was charged with 3rd degree rape and malfeasance in office. The Sheriff had a written policy against having a male deputy guarding a female inmate without another deputy

---

[1] Doc. 1.
[2] Defendants exhibit B, Luke Gaspard Declaration ¶ 4.
[3] *Id.*

present.[4] Deputy Bailey was sent by his supervisor to guard Farmer at the hospital, without another officer.[5]

Farmer's mother, Frankie Howell, has been appointed as administratrix of the Estates of Misty Howell Farmer.[6]

**SUMMARY JUDGMENT STANDARD**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

---

[4] Plaintiff's exhibit 3.
[5] *Id.*
[6] Plaintiff's exhibit 5, Letters of Administration.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## <u>LAW AND ANALYSIS</u>

Plaintiff has named former Sheriff, Ricky Moses as a Defendant in his official capacity under various *Monell* theories, including a failure to supervise, train, and provide adequate medical care.  Plaintiff also has sued Sheriff Moses under a Louisiana state law theory of vicarious liability. Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against Defendants Jeannie Irvine, Jermaine Tyler, and Joe Toler in their official.

Defendants move to dismiss Plaintiff's survival action as to Frankie Sue Howell. Defendants also move to dismiss Plaintiff's 42 U.S.C. § 1983 claims against all Defendants in both their individual or official capacity, and any state law claims against former Sheriff Moses related to hiring and supervision based on qualified immunity.

*Proper Plaintiff*

Plaintiff, Misty Howell Farmer, initially filed the instant lawsuit. Unfortunately, on May 17, 2022, Ms. Farmer died intestate. On January 23, 2024, Defendants propounded Requests for Admissions to Plaintiff's Mother Frankie Sue Howell, which asked for Howell to admit that: (1) Alanis T. Perkins, (2) Elijah J. Farmer, (3) Samuel Farmer, and

(4) Hannah Farmer are Farmer's children. Howell was also asked to admit that she was Farmer's mother.   Defendants remark that Plaintiff failed to submit responses to Defendant's Requests for Admissions and asks that the Court deem the admissions admitted. Defendants then suggest that Howell is not the proper party to this matter and requests that the lawsuit be dismissed.

The Request for Admissions that received no response admits that the four above mentioned children are the children of Farmer, and that Howell is the mother of Farmer and grandmother of the children.

In her Opposition, Counsel for Plaintiff states that two of Farmer's children are majors and two are minors.[7] Plaintiff suggests that an amendment of the pleadings would resolve this issue.[8]  The Court agrees.

In Plaintiff's "Corrective Document" Plaintiff states that Misty Howell Farmer, the grandmother of Farmer's children has been appointed as the Administratrix of the Estate of Misty Howell Farmer.  Plaintiff also attaches Letters of Administration to establish this fact.  The Court notes that on December 29, 2022, Plaintiff filed a "First Supplemental Civil Rights Compliant for Damages under 42 U.S.C. 1983," which named Frankie Sue Howell as the appointed Administratrix of the Succession of Misty Adean Howell Farmer Clinton.[9] Attached to the Amended Complaint was the "Letters of Administration" certifying Howell's appointment on October 27, 2022.[10]

---

[7] Doc. 55, p.5.
[8] *Id.*
[9] Doc. 45.
[10] Plaintiff's exhibit a, Doc. 45-1.

Defendants argue that Howell cannot, as a Succession Representative, pursue a survival action because under Louisiana law, a higher class of beneficiary exists which present a defect of "standing."

Louisiana Civil Code article 2315.1 provides that only certain classes of persons may recover damages for injury sustained by the deceased. Indeed, "the right to pursue a survival or wrongful death action is available to four exclusive categories of survivors":

> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
>
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
>
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

*Fletcher v. Whittington*, 2022 WL 732076 at *2 (W.D. La. Mar. 10, 2022) (quoting *Abraugh v. Altimus*, 26 F. 4th 298, 302 (5th Cir. 2022 (citing La. Civ. Code Arts. 2315.1(A) & 2315.2(A)). Louisiana's survival action code article permits a deceased's succession representative to step into the metaphorical shoes of the deceased, but this may only occur "in the absence of any class of beneficiary" as set forth above.

As explained by the Fifth Circuit in *Abraugh*, a plaintiff's inability to sue under Louisiana law because of the exclusive categories set forth in the survival and wrongful death statutes is a defect of "standing." *Abraugh*, 26 F.4th 303. However, "it is a defect of prudential standing, not Article III standing." *Id.* This distinction matters, as "Article III standing is the only kind of standing required before a federal district court can exercise

subject matter jurisdiction." *Id.* Here, it appears that an Amendment of the pleadings can resolve Defendant's concerns, and dismissal is not warranted.

*Claim for denial of medical care*

Defendants argue that Plaintiff has failed to lodge any federal claims against any party other than Defendant, Dale Bailey.  Defendants move to dismiss Plaintiff's claims of denial of medical care.

To succeed on a pretrial detainee's right to medical care under the Fourteenth Amendment, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).

To prove deliberate indifference, a plaintiff must show that a defendant "knew that [the inmate] faced a substantial risk of serious harm and failed to take reasonable measures to abate the risk." *Williams v. City of Yazoo*, 41 F.4th 416, 424 (5th Cir. 2022). The knowledge inquiry is subjective, and the reasonableness inquiry is objective. *Id.* Crucially, deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind and requires facts "clearly evincing wanton actions on the part of the defendants." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Deliberate indifference is an extremely high standard to meet." *Id.* Moreover, it cannot be inferred "merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. *Thompson*, 245 F.3d at 459 (cleaned up).

To prove a denial of medical care claim, Plaintiff must submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that would clearly evince a wanton disregard for any **serious medical needs**." *Domino*, 239 F.3d at 756 (emphasis added).

The "failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient for the purpose of showing deliberate indifference. *Id*., citing *Farmer*, 511 U.S. at 837. Indeed, "'an inadvertent failure to provide adequate medical care'" does not violate the Constitution. *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018). Nor does an inmate have a constitutional right to the treatment she prefers or the best medical treatment available. *Estelle*, 429 U.S. at 105-06. A "mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice." *Id.* citing *Vardnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 2001) (per curiam).

Plaintiff alleges that Ms. Farmer sent a request for medical care on April 27, 2019, and received a response on April 29, 2019. She alleges that she sent a second request for medical care on May 1, 2019, and another on May 11, 2019.  Ms. Farmer alleges that she was told she would see a healthcare provider on May 15, 2019, and in the interim, she could buy a "rub" and ibuprofen.  Plaintiff alleges that the May 15, 2019, appointment did not happen.  Plaintiff alleges she made another request for medical care on May 27, 2019, and on May 28, 2019, she was admitted to Beauregard Memorial Hospital complaining of abdominal pain and a temperature of 102 degrees.[11] Ms. Farmer was discharged on May 30, 2019.[12]

---

[11] Plaintiff's exhibit 1, Doc. 58-1.
[12] *Id.*

Defendants have submitted the Declaration of Luke Gaspard, the Assistant Warden employed with the Beauregard Parish Sheriff's Office, who declares that Ms. Farmer was booked into the Parish Jail on April 23, 2019.[13] Ms. Farmer made only two written Requests for Medical Services between the period of May 11, 2019, and May 27, 2019.[14] As to the first request, Nurse Lisa Gearen responded on May 13, 2019, and advised Ms. Farmer to purchase a muscle rub and Ibuprofen until she could be seen on May 15, 2019, for her lower back pain complaints.[15]  Ms. Farmer was seen by medical staff on May 15, 2019,[16] who noted that Ms. Farmer had complaints of shoulder pain, lower back pain, insomnia and anxiety.[17] On May 27, 2019, Mr. Farmer made a Request for Medical Services wherein she complained of having a discharge and odor. She received a response on May 28, 2019, and was sent to the Beauregard Memorial Hospital.[18]

Other than the May 28, 2019, admission to Beauregard Memorial Hospital and the two requests for medical care, Plaintiff has submitted no summary judgment evidence to support her claim for denial of proper medical care and/or that the alleged requests for medical care were made. To adequately oppose a motion for summary judgment, a non-moving party is required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Brown v. PNK (Lake Charles)* LLC, Civ. Action No. 2:20-cv-1347, 2022 WL 553747 at *1 (W.D. La. Feb. 23, 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 286 (1986). "To this end [she] must submit 'significant probative

---

[13] Defendant's exhibit B, Declaration of Luke Gaspard, ¶ 4. Doc. 52-4; Defendant's exhibit C, Declaration of Lisa Gearen.
[14] *Id.*
[15] *Id.* ¶ ¶ 4-5 and att. exhibit B-1.
[16] *Id.* and arr. Exhibit B-3.
[17] *Id.* att. B-3, Doc. 52-4.
[18] *Id.* ¶ 5(d) att. B-4, Doc. 52-4.

evidence' in support of [her] claim." *Id.* (citing *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).

Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* Unsubstantiated allegations are the ground upon which Plaintiff's opposition is built. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Crucially, "A court may not rely on the mere factual allegations in an unverified complaint to make summary-judgment rulings." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020).

At the summary judgment stage Plaintiff has failed to accomplish her goal to create a genuine issue of material fact for trial as to her denial of medical care claims. The Court will not consider Plaintiff's allegations, or statements made in a Memorandum as fact. The Court notes that none of the statements made by Plaintiff were supported by any summary judgment evidence. When a nonmoving party fails to make a showing sufficient to establish the existence of an element essential to her case and on which she will bear the burden at trial, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). As such, the Court will dismiss Plaintiff's claim for denial of medical care as to all Defendants.

*Monell Claims*

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agent. Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy or custom, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978).

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). An official capacity claim against the Sheriff would in reality, be a claim against the local governmental entity itself. *Passerrello v. Sumner*, 2013 WL 4590618 at *2 (W.D. La 8/28/13) (citing *Glasper v. Guzman*, 2009 WL 1507568 at *6 (E.D. La. 5/27/09)). The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was the cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege the custom or policy served as a moving force behind the constitutional violation at issue, or that [her] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Tex. City Police Dept.*, 130 F.3d 162, 167 (5th Cir 1997) (quotation marks, brackets and citations omitted).

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, Tex*, 981 F.2d 237, 245

(5th Cir. 1993). Rather, she must identify the policy or custom which allegedly caused the deprivation of her constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 Fed.App'x 547, 549 (5th Cir. 2003) (citing *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 n. 10 (5th Cir. 2000); *Treece v. Louisiana*, 74 Fed.App'x 315, 316 (5th Cir. 2003), *Monell*, 436 U.S. at 694, 98 S.Ct. 2018, (1978); *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996).

An "official policy" may be either a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers *or* a persistent, widespread practice … which, although not authorized by an officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents a municipal policy. *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "Isolated acts" generally cannot establish the existence of a custom or practice. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A custom is tantamount official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841. Where prior incidents are used to prove a custom, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice…" *Id.* at 842. This standard requires similarity and specificity, as "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). A custom also

requires "sufficiently numerous prior incidents." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

*§ 1983 denial of medical care against Sheriff Moses in his official capacity*

Here, Defendant, Sheriff Moses argues that Plaintiff has not identified a policy, practice or custom which served to violate Plaintiff's constitutional rights as to Plaintiff's claim of denial of medical care. There is a complete absence of summary judgment evidence that Sheriff Moses had a policy, practice or custom that repeatedly denied medical care to its pretrial detainees.  As such, the § 1983 claims against Sheriff Moses for denial of medical care will be dismissed.

*Failure to train or supervise against Sheriff Moses in his official capacity*

"[T]he failure to provide proper training may fairly be said to represent a policy for which the [Defendants are] responsible, and for which [they] may be held liable if it actually causes injury." *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197 (1989). An official's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350 (2011). A municipality's failure to train or supervise its employees must amount to "deliberate indifference to the rights of a person with whom the [untrained employees] come into contact. *City of Canton,* 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983. *Id.* at 389; *Connick,* 563 U.S. at 61. In order for liability to attach due to a claim for failure to train, the plaintiff "must allege with specificity how a particular training program is defective." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

Defendants argue that both Farmer and Howell failed to satisfy the basic requirements to assert their claims for failure to supervise or train. Defendants note that Plaintiff has failed to establish a pattern of similar constitutional violations by untrained employees. Additionally, Plaintiff has not shown that the training program is defective.

For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S 825, 837, 114 S.Ct. 1970 (1994).

Here, Plaintiffs present evidence of the BPSO's written directive required that:

> Male Correctional Officers will be accompanied by a female employee or correctional Officer when supervising a female prisoner to ensure the privacy of the inmate.  If a female employee is not available, then two (2) male Correctional Officers will be present.[19]

While this evidence may establish that the BPSO did not follow its own policy in this one instance, it does not establish that the BPSO had a policy, custom or practice of improperly training or supervising its employees. Nor does it establish that the BPSO was deliberately indifferent to its prisoners. Because Plaintiff has failed to establish that Sheriff Moses had a policy, custom or practice of failure to train or supervise, Plaintiff's *Monell* claims against Sheriff Moses will be dismissed.

*Monell Claim against Jeannie Irvine, Jermaine Tyler, Joe Toler, and Lisa Gearen in their official capacity*

Defendants note that it appears that Plaintiff has alleged claims of failure to train and/or supervise against Defendants, Irvine, Tyler, Toler and Gearen in their official

---

[19] Plaintiff's exhibit 3, ¶ 6. Doc. 58-3.

capacity and potentially in their individual capacity. These Defendants argue that these claims can only be brought against a party in their official capacity. Defendants argue that an official capacity suit can only be brought against an official acting as a policymaker. *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023). The Court must look to Louisiana state law when making the "policymaker" determination. *Id.*

Sheriff Moses is the final policymaker for purposes of this lawsuit, thus any claims of failure to train and/or supervise can only be made against Sheriff Moses. Considering that the Sheriff is the final policymaker, Plaintiff's failure to train or supervise against Irvine, Tyler Toler, and Gearen in their official capacity, will be dismissed.

*Claims against Sheriff Moses, Jeannie Irvine, Jermaine Tyler, Joe Toler, and Lisa Gearen in their individual capacity*

Also, as to Plaintiff's individual capacity claims against Sheriff Moses, Irvine Tyler, Toler and Gearen, individual liability against a supervisor under § 1983 is established only "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)); see also *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted).

Plaintiff has not alleged that Sheriff Moses, Irvine, Tyler, Toler, or Gearen were supervisors or personally involved in the facts of this case as to the alleged actions of Dale Bailey. Furthermore, Plaintiff has not alleged how these Defendants violated any of Farmer's constitutional rights that amounted to deliberate indifference. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Finally, Plaintiff has failed to show that any of

these Defendants were aware of facts from which the inference could be drawn that a substantial risk of harm existed, and that Defendants actually drew that inference. See *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2015).  The Court agrees that Plaintiff's claims against Sheriff Moses, Irvine, Tyler, Toler and Gearen, in their individual capacity for the actions of Defendant Dale Bailey can only be brought against a party in their official capacity—Sheriff Moses.

## QUALIFIED IMMUNITY

A state official can be sued in his individual capacity and held personally liable under § 1983 if the plaintiff can show the official, acting under state law, caused the deprivation of a federal right.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361-62 (1991).  The Plaintiff must allege specific acts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

Government officials may invoke qualified immunity, which shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). The Supreme Court has emphasized that qualified immunity functions as immunity from suit rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, (2009).

At the summary judgment stage of a § 1983 action:

> A defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses. "The moving party is not required to put forth evidence to meet its summary

judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." "Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it."

*Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (footnote omitted) (cleaned up).

"[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Arledge v. Sherrill*, 738 So.2d 1215, 1220, (La. App. 2 Cir. 8/18/99) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98; *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan ex rel. v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d. 307, 312 (5th Cir. 2001). Even in those instances where law enforcement officers reasonably but mistakenly conclude that probable cause to make an arrest is present, they should not be held personally liable. *Breaux v. Jefferson Davis Sheriff's Dept.*, 689 So.2d 615, 617, (La. App. 3 Cir. 2/5/97) (citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, (1982)). "The inquiry is whether the *totality* of the circumstances in the case *sub judice* justified the actions of the [defendant]." *Breaux, supra.* Further, facts that an officer learns after the fact are not relevant, regardless of whether they would support the granting of qualified immunity or denying it. *Hernandez v. Mesa*, 582 U.S. 548, 137 S.Ct. 2003, 2007, (2017) (per curiam).

Indeed, a law enforcement officer's "actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once the government official asserts qualified

immunity, the burden shifts to the plaintiff to negate the defense. *Collier v. Montgomery*, 569 F.3d. 214, 217 (5th Cir. 2009). To overcome a claim of qualified immunity, a plaintiff must demonstrate: "1) that the official violated a statutory or constitutional right; and 2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080 (2011); *Club Retro, LLC,* 568 F.3d at 194. Per the Fifth Circuit, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, (1987)). A defendant's actions "are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution, or the federal statute as alleged by the plaintiff." *Thompson,* 245 F.3d at 457 (citing *Anderson,* 483 U.S. 635, 107 S.Ct. at 3040; *Malley*, 106 S.Ct. at 1096; *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (emphasis in original).

*Qualified immunity as to claim for denial of medical care*

Defendants assert that Plaintiff has made claims against Gearen in her individual capacity, and possibly against Sheriff Moses, Irvine, Tyler, and Toler for denial of medical care. These Defendants argue that to the extent that Plaintiff has asserted claims against them in their individual capacities, they are entitled to qualified immunity.

Even though the Court has determined the Plaintiff's claim for denial of medical care is to be dismissed, the Court further finds that Sheriff Moses, Jeannie Irvine, Jermaine Tyler, and Joe Toler are entitled to qualified immunity as to the alleged denial of medical

care. After the reviewing the relevant facts and evidence submitted by the parties, Plaintiff

has failed to show that any of these Defendants individually violated Plaintiff's

constitutionally protected rights as to her alleged claim for denial of medical care.

*Failure to train and supervise against Sheriff Moses, Irvine, Tyler, Toler and Gearen, in their individual capacity*

Plaintiff alleges that Defendants Sheriff Moses, Irvine, Tyler, Toler and Gearen

failed to train and/or supervise unidentified employees of the BPSO.[20] As noted by these

Defendants, supervisory officials are not liable under § 1983 for the actions of subordinates

under any theory of vicarious liability. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th

Cir. 2017); *Oliver v Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create

supervisory or *respondeat superior* liability."). And as noted above, individual liability

against a supervisor under § 1983 requires affirmative participation.

In the absence of personal participation, a § 1983 plaintiff must demonstrate "(1)

the supervisor failed to supervise or train a subordinate official; (2) a causal link exists

between the failure to train or supervise and the violation of the plaintiff's rights; and (3)

the failure to train or supervise amounts to deliberate indifference." *Mesa v. Prejean*, 593

F.3d 264, 274 (5th Cir. 2008); *Smith v. Packnett*, 339 Fed.App'x 389, 393 (5th Cir. 2009).

Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id.*

(cleaned up). The Fifth Circuit has emphasized that:

> deliberate indifference is a stringent standard of fault, requiring proof that a
> municipal actor disregarded a known or obvious consequence of his action.
> To establish that a state actor disregarded a known or obvious consequence
> of his actions, there must be actual or constructive notice that a particular
> omission in their training program causes . . . employees to violate citizens'
> constitutional rights and the actor nevertheless choose[s] to retain that

---

[20] Doc. 1, ¶ 22.

program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011), (internal quotation marks and citations omitted); *Mesa, supra* (deliberate indifference generally requires more than a single instance of lack of training or supervision that results in a constitutional violation).

As with Plaintiff's claims for denial of medical care, Plaintiff has failed to show that any of these Defendants individually violated Plaintiff's constitutionally protected rights as to her alleged claims of failure to train and/or supervise. Plaintiff has failed to establish the supervisory capacity of any of the Defendants regarding Bailey or Gearen. Significantly, Plaintiff has failed to show that Defendants had actual or constructive notice of a particular defect in a training program, or a pattern of similar constitutional violations by untrained employees to establish that they were deliberately indifferent. Finally, Plaintiff fails to establish the personal involvement of any of these Defendants. See *Thompson v. Steel*, 709 F.2d 381, 382 (5th Cir. 1983). The absence of such evidence is fatal to Plaintiff's claims. As such, Plaintiff's claims against Sheriff Moses, Irvine, Tyler, Toler, and Gearen in their individual capacity for failure to train and/or supervise fail.

*Louisiana state law claims*

The Court has found that Plaintiff's 42 U.S.C. § 1983 claims, of which we have original jurisdiction under 28 U.S.C. § 1331 and 1343, should be dismissed leaving only Plaintiff's state law claims. Plaintiff's state law claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or

controversy.  Despite finding that Plaintiff's federal claims should be dismissed, this Court may still maintain supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367 (c)(3) states that the "district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction." The court for the Eastern District of Louisiana has said, "Section 1367(c)(3) specifically grants district courts the discretion to retain or decline supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction." *Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 956 F.Supp.2d 722, 735 (E.D. La. 2013), *aff'd*, 562 Fed.App'x. 209 (5th Cir.2014).

In determining whether to exercise this discretion a court should look to values of judicial economy, convenience, fairness, and comity. No one factor is dispositive. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619 (1988). This case has been pending before this Court for over four years and to decline to exercise jurisdiction now would be a waste of the time and monies that have already been expended by both the Court and the litigants in this matter. Declining to exercise jurisdiction and thus dismissing the case would also result in Plaintiff's inability to bring suit in state court as the claims would have prescribed. It could not be said that this would be in the interest of fairness or comity because a serious wrong has occurred here. Determination of whether this wrong can be attributed to the Defendants has yet to be decided but for this Court to decline to retain jurisdiction before this determination is made would be unjust. Considering these factors this Court chooses to exercise the power to maintain supplemental jurisdiction at its discretion.

Plaintiff has asserted a claim for negligent hiring and negligent supervision against Defendants under Louisiana state law. In Louisiana, the Sheriff is considered the employer of his deputies.   See *James v. Duplantis*, 2021 WL 727547 at *1 (La. App. 1 Cir. 2/25/2021).   Under Louisiana law, the definition of a "political subdivision" includes "sheriff." Louisiana Revised Statute. § 13:5102(B)(1).   Consequently, any state law claims for negligent hiring and negligent supervision against Defendants Irvine, Tyler, Toler, and Gearen will be dismissed because the Sheriff is the only proper party to such claims.

Sheriff Moses argues that he is entitled to qualified immunity under Louisiana Revised Statute 9:2798.1.   Under LSA-R.S. 9:2798.1 political subdivisions and their employees are immune from suit when the allegations of a lawsuit are based on "the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."

A sheriff's decision to hire, train, supervise, and retain officers are part of his discretionary power. *Curran v. Aleshire*, 67 F.Supp.3d 741, 763-64 (E.D. La. 2014). Louisiana Revised Statute 9:2798.1, provides in pertinent part:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts are within the course and scope of their lawful powers and duties.

*Gomez v. City of New Orleans*, is instructive as to exceptions to the Sheriff's affirmative defense of immunity under the state statute:

> [I]mmunity does not apply to "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the

policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. Louisiana Revised Statute 9:2798.1(C).   Louisiana courts have devised a two-step inquiry for determining whether the statute's policymaking or discretionary acts immunity applies to a given set of facts.  First, a court must look to whether a statute, policy, or regulation required the government employee to follow the particular course of conduct as issue.  *Aucoin v. Larpenter*, 324 So.3d 626, 637 (La.App. 2021). If so, then the actor omission did not involve discretion and discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic of political policy. *Id.* at 637-38. See also *Gregor v. Argenot Greeat Cent. Inc. Co.*, 851 so.2d 959, 968 (La. 2003) (same); *Dominique v. St. Tammany Parish*, 313 So.3d 397, 315 (La. App. 2020) (same) Governmental actions unrelated to public policy considerations are commonly referred to as "operational," as opposed to discretionary, and thus do not implicate discretionary acts immunity under the statute. See, e.gl, *Aucoin*, 324 So.3d at 638 ("The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns."); *Dominique*, 313 So.3d at 315 (same); *Sauceberry v. Webre*, 2017 WL 1788096, at *4 (La. App. May 5, 2017) (same); *Gregor*, 851 So.2d at 968 (holding that governmental action at issue was "operational negligence" where "the government act[ed] negligently for reasons unrelated to public policy consideration").

2023 WL 4351230, *3 (E.D. La. July 5, 2023). Discretionary immunity under La. R.S. 9:2798.1 is an affirmative defense, which requires that the party raising it bears the initial burden of demonstrating its applicability. See *Dominique*, 313 So.3d at 314. If the defendant establishes entitlement to immunity, the burden then shifts to plaintiff to show conduct that would except the defendant from liability. *Id.* "Immunity statutes are strictly construed against the party claiming immunity. *Id.*

The Sheriff argues that he is entitled to immunity for Plaintiff's claims of negligent hiring or supervision under Louisiana law. However, "when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures." *Aucoin*, 324 So.3d at 637. "[O]nce a discretionary decision is made, the

government entity is not protected from liability for conduct in carrying out the discretionary act." *Populis v. State Dep't of Transp. & Dev.*, 222 So.3d 975, 981 (La. App. 2017) (quoting *Banks v. Par. Of Jefferson*, 108 So.3d 1208, 1214 (La. App. 2013). Although a public entity might enjoy immunity from liability for harm arising out of its discretionary hiring, retention, and supervision decisions, see *Smith v. Lafayette Parish Sheriff's Dep.*, 874 so.2d 863 (La.App. 3 Cir. 4/21/04), La. R.S. 9:2798.1 does not shield a governmental actor when it implements such decisions in a negligent fashion.

Here, Plaintiff has submitted summary judgment evidence that creates a genuine issue of material fact for trial that the Sheriff was negligent in hiring Dale Bailey. Plaintiff relies on a liability screening of Bailey dated May 8, 2019, by Matrix Incorporated.[21] Despite that the overall summary of the liability screening finds that Bailey is in the "Average Range,"[22] details of the liability screening reveal that Bailey;

(1)     has a history of a psychological disorder that required  treatment   ... and a fitness for duty evaluation should be initiated;

(2)     was previously diagnosed and treated for a chemical dependency or abuse problem (e.g., alcohol, narcotics, etc.);

(3)     was previously demoted and an investigation in this issue is indicated;

(4)     reported prior illicit drug use;

(5)     reported mental health treatment within the past six month requiring psychiatric clearance by the treating doctor/therapist for determining the candidate's mental status and stability;

(6)     revealed a history of learning difficulties indicating a need for further attention and formal testing;

---

[21] Plaintiff's exhibit (not identified), Doc. 55-1.
[22] *Id.*

(7)      reported the use of prescription medication(s) that suggest an ongoing medical or emotional condition requiring medical clearance by the prescribing physician;

(8)      endorses a medical condition that may impact the job requirements of a law enforcement officer requiring medical clearance.[23]

Additionally, Plaintiff has provided the BPSO's policy, which expressly states that a "[m]ale Correctional Officer will be accompanied by a female employee or Correctional Officer when supervising a female prisoner to ensure the privacy of the inmate.  If a female employee is not available, then two (2) male Correctional Officers will be present."[24]

As such, the Court finds that the Sheriff's decision to hire Bailey, and to violate his own policy as to the procedure to accompany a female inmate when supervising them are operational decisions, not policy or rule-making decisions.  As such, Plaintiff has provided sufficient summary judgment evidence to create a genuine issue of material fact for trial that the Sheriff acted negligently for reasons unrelated to public policy considerations. Consequently, the Sheriff is not entitled to judgment as a matter of law and the motion for summary judgment as to Plaintiff's state law negligent hiring and supervising claims will be denied.

## CONCLUSION

For the reasons explained herein, the Court will grant the Defendants, Sheriff Rickey Moses, Jeannie Irvine, Jermaine Tyler, Joe Toler and Lisa Gearen's Motion in its entirety as to its federal claims in both Defendants' individual and official capacity and Plaintiff's state law claims against Defendants Jeannie Irvine, Jermaine Tyler, Joe Toler

---

[23] *Id.*
[24] Plaintiff's exhibit 3, Doc. 58-3.

and Lisa Gearen. However, the Sheriff is not entitled to judgment as a matter of law concerning the motion for summary judgment as to Plaintiff's state law negligent hiring and supervising claims. To that end, this portion of Defendants' motion will be denied.

The Court will also permit Plaintiff to amend its complaint within 30 days to substitute the proper Plaintiff as explained hereinabove. Finally, considering the approaching June 25, 2024, pretrial conference and July 22, 2024, jury trial date, the Court will continue the trial and pretrial conference and refer the matter to the Magistrate Judge for a new trial scheduling conference.

**THUS DONE AND SIGNED** in Chambers on this 13th day of June, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**